646 A.2d 38

Mae WILLIAMSON, Petitioner,

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 12, 1994.

Decided July 15, 1994.

80

Jack J. Hetherington, for petitioner.

Andrew A. Coates, Asst. Counsel, for respondent.

Before KELLEY and NEWMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

In this troublesome case, the Department of Public Welfare denied Mae Williamson's application for nursing home care assistance. The Department determined that Mrs. Williamson was disqualified from nursing home benefits because of transfers of real estate and savings accounts from her to her son, Richard Williamson, for less than adequate consideration. These transfers were made by the son, to himself, while purportedly acting as attorney-in-fact for his mother.

Mrs. Williamson petitions for review of the July 1, 1993 corrected final order of the Secretary of the Department of Welfare upholding Hearing Officer Henry A. Daniel's denial of an application for nursing home care.[1] (R.R. 87.) The principal issue before us is whether there is substantial evidence to support the Department's determination that Mrs. Williamson failed to rebut the presumption that the transfers of property from her to her son were for less than fair and adequate consideration and were made for the prohibited purpose of qualifying her for assistance.[2] We affirm.

1. The Secretary reversed Hearing Officer Daniel's denial of the mother's application for *medical* assistance concluding that fair consideration is not a determinative factor under medical assistance. Thus, only the issue of denial of *nursing home* assistance is before us in this appeal.

2. Counsel for the mother argues that the record is incomplete and inaccurate to such an extent that this Court cannot conduct an adequate review. We disagree. While the record is not perfect, it does contain lengthy testimony from several witnesses as well as numerous documents. From a thorough review of the record, we conclude that the Hearing Officer gave both the County Assistance Office and the son leeway in testifying and presenting any evidence in support of their respective positions. The Hearing Officer simply did not find the son to be credible.

Section 1404(a) of the Public Welfare Code, Act of June 13, 1967, P.L. 31 *as amended,* 62 P.S. § 1404(a) provides:

> (a) Any person applying for medical assistance benefits shall certify to the department that he or she has not transferred title to or ownership interests in any real or personal property to any third person or party within the two years immediately preceding such application; if such a transfer has occurred, the recipient must disclose the nature of the transfer and must demonstrate that it involves, a bona fide arm's length transaction resulting in compensation paid to the transferor in an amount equal to or greater than the fair market value of the property as determined by the department.

*See also Park v. Department of Public Welfare,* 135 Pa.Commonwealth Ct. 457, 582 A.2d 1138 (1990); *Groblewski v. Department of Public Welfare,* 108 Pa.Commonwealth Ct. 102, 528 A.2d 1084 (1987); *Goughenour v. Department of Public Welfare,* 100 Pa.Commonwealth Ct. 401, 514 A.2d 993 (1986).

■ Our scope of review requires that we determine whether the Department's adjudication comports with the applicable law, whether its findings are supported by substantial evidence and whether any constitutional rights were violated. *Cruz v. Department of Public Welfare,* 80 Pa.Commonwealth Ct. 360, 472 A.2d 725 (1984).

On January 15, 1992, the son, presumably acting pursuant to a February 23, 1991 power of attorney granted by his mother (R.R. 44–46), transferred his mother's residence at 164 Dogwood Drive, Levittown to himself for a nominal consideration of $1.00. Langhorne Gardens Nursing Home admitted his mother two days later on January 17, 1992 as a private payor. (February 8, 1993 Adjudication at 5.)

On August 7, 1992, the son, acting as representative of his mother, filed an application for medical assistance and nursing home care with the Bucks County Assistance Office. (R.R. 10–14.) In response to the question whether there had been a sale or transfer of personal property or real estate within the last two years, the son answered "no." He further responded

that his mother had only $300.00 in her savings account. (R.R. 12.) In fact, Hearing Officer Harry A. Daniel found that "[t]hree days prior to the [mother's] admittance into the nursing center, [she] had approximately $28,420.36 in liquid assets in the form of $1,960.86 in a custom checking account, $6,513.50 in a statement savings account, and $20,000 worth of Certificates of Deposit (CD's)." (Adjudication at 5.)

On September 2, 1992, the County Assistance Office rejected the mother's application for nursing home care having determined that she had not received fair consideration for the transfer of her resources including her bank accounts and real estate. On October 23, 1992, Langhorne Gardens submitted a letter advising her of its intent to discharge her for nonpayment, effective thirty days after November 23, 1992.

On behalf of the mother, Sauers Consultation and Services for the Elderly (Sauers) requested a stay of her discharge from the nursing home on October 26, 1992. The Office of Hearing and Appeals granted the representative's request for intervention and a stay.

On February 8, 1993, Hearing Officer Daniel denied the mother's appeal, concluding that the mother had received no benefit from the transfer of the residence or the son's appropriation of about $16,000 of her liquid assets. On February 18, 1993, Sauers sought reconsideration of the order denying the appeal. (R.R. 79.) On March 2, 1993, the Secretary of the Department of Welfare granted reconsideration. After two so-called final orders on the merits, dated April 9 and May 14, 1993 (R.R. 85–86), the Secretary issued the July 1, 1993 "Corrected Final Order on The Merits" (R.R. 87) upholding the denial of the mother's application for nursing home care assistance.

## 1. Burden of Proof

55 Pa.Code § 178.171(a) provides as follows:

(a) An applicant/recipient who disposes of real or personal property having a value of $500.00 [3] or more without

---

3. Counsel for the mother argues that the Hearing Officer erred in accepting the testimony of the County Assistance Office witness as to

receiving fair consideration within 2 years immediately preceding the date of his application for MA [medical assistance] is presumed to have disposed of the property with the intention of qualifying for MA.

55 Pa.Code § 178.171(a) (footnote added).

■ Counsel for the mother first argues that there is no substantial evidence to support the Department's finding that she is ineligible for nursing home care assistance because the County Assistance Office did not present any evidence to rebut the presumption that the transfer was for purposes of qualifying for medical assistance.

Contrary to the belief of the mother's counsel, however, it was not the Department's burden to rebut the presumption that a transfer made within two years was for purposes of qualifying for medical assistance. If the ultimate conclusion of the fact finder is that the transfer was made for the purpose of qualifying for medical assistance, the result is that, for the purpose of determining eligibility, the transferred assets are included within the applicant's assets. *Park; Groblewski.*

According to 55 Pa.Code § 178.172, "[i]f the presumption to qualify for MA is made by the Department, the applicant/recipient is notified of the finding, in writing, and is advised of the right to rebut this presumption within 15 days from the date the written notice is mailed."

For good reasons, the onus is on the applicant, and not the Department, to rebut a presumption that a transfer made within two years was for purposes of qualifying for assistance. Only the applicant has the requisite knowledge available to attempt to prove why he or she satisfies any of the 55 Pa.Code § 178.101(f) exceptions to ineligibility when a transfer is made within two years of the application date.

the value of the property because that witness was not a proper appraiser of property. In this case, however, we do not believe that a finding as to the precise appraised value of the property is relevant except to the extent that it was above $500.00. Additionally, we note that no one objected to Income Maintenance Supervisor Freddie Gale's testimony at the December 15, 1992 hearing as to the $90,000.00 figure. (R.R. 97.)

In addition, in this case, we are compelled to stress that the son as fiduciary stands in a confidential relationship with his aged and infirm mother and that the $1.00 conveyance and exhaustion of her liquid resources are automatically suspect.

Where a confidential relationship is shown to exist, the burden is upon the dominating party to a transaction to prove by clear and satisfactory evidence that the agreement or deed was the free, voluntary and independent act of the other party, entered or executed with a knowledge and understanding of the nature, terms and consequences thereof.

*Estate of Buriak v. Sperl,* 342 Pa.Superior Ct. 371, 374, 492 A.2d 1166, 1168 (1985); *Burns v. Kabboul,* 407 Pa.Superior Ct. 289, 595 A.2d 1153 (1991), *petition for allowance of appeal denied,* 529 Pa. 655, 604 A.2d 247 (1992). It was clearly the son's responsibility to prove that there was no impropriety present in the transaction and he failed to persuade the fact finder.

■ The mother secondly argues that there is no substantial evidence to support the Secretary's order, because no one requested that the mother be there to testify and rebut any presumption. The Department quite correctly notes that it was not its responsibility to get the mother to the hearing. Significantly, she had given her power of attorney to her son to "apply for government and insurance benefits" and to "contract for medical ... care." (R.R. 45.) Again, she is in a fiduciary relationship with her son and he mistakenly is attempting to blame the Department for his conduct in transferring his principal's property to himself.[4] In addition, the Department points out that the mother's failure to appear at the hearing was not raised at the hearing and cannot now constitute a defense. We agree.

## 2. Exceptions to Ineligibility

55 Pa.Code § 178.101(f) sets forth certain exceptions to the presumption that a transfer for less than fair consideration

4. Whether the mother as principal has an action against her son as fiduciary is not before us.

made within two years immediately preceding the benefit application date was for purposes of qualifying for assistance:

(f) A person who is an inpatient in a skilled nursing facility ... is not ineligible for MA because of the transfer of resident property for less than fair consideration of the property if one of the following applies:

(1) The person can reasonably be expected to be discharged from the institution and to return to that resident property.

(2) The title to the resident property was transferred to the person's spouse or child who is under 21 years of age, or a child who is blind or disabled regardless of age.

(3) It can be established that the person intended to dispose of the home either at FMV [fair market value] or for other valuable compensation.

(4) The Department determines that the denial of eligibility would work undue hardship.

55 Pa.Code § 178.101(f)(1)–(4). Here, the mother's counsel seems to be relying on exceptions (1) and (4). We will address each in turn.

With regard to the first exception, that there is a reasonable expectation that the applicant will return to her residence, the mother argues that the Hearing Officer erroneously ignored the testimony of the son regarding his motives for depleting her liquid resources, transferring title of the house to himself pursuant to the power of attorney and in repairing the house. We conclude, however, that there is substantial evidence to support the Hearing Officer's findings.

The son testified that he transferred the title of the house to himself because the mother supposedly was unable to qualify for a home equity loan. He stated that some major changes were necessary in order to make the house more livable for both his mother and for his family. The Hearing Officer, however, noted that the existence of the mother's available resources "would suggest to this Hearing Officer that if the [mother's] power of attorney believed or was told that his mother would be able to return home, the liquid assets

available to [her] would have been used to revamp the home to accommodate her upon her return from the nursing center." (Adjudication at 5.) Further, the Hearing Officer noted that "[i]f the cost of the remodelling or revamping of the [mother's] home was $20,000 or less, [she] had available assets for the repair." *Id.* Additionally, the Hearing Officer pointed out that the son presented no documentation that his mother had ever applied for a home equity loan, let alone been rejected.

The Hearing Officer also noted that, if the son really believed that his mother would be able to live at home again, his repairs and use of her liquid resources to pay for his own utilities while living there were not consistent with that belief. He concluded that, if the title to the house had remained in her name, the repairs still could have been done to her house out of her assets, even though she supposedly could not qualify for a home equity loan.

In addition, the son admitted that, even though he may have told someone that he believed that his mother would never live at home again, he did not mean it. (R.R. 150–51.) Further, the Hearing Officer duly noted the inconsistency between the son's negative response on the application regarding whether a transfer had taken place and subsequent admission that one had taken place. The son testified that he "inadvertently" answered "no" to the question. (R.R. 126.)

Based on the substantial evidence found in the son's testimony and documentation in the record, we conclude that the Hearing Officer did not err in finding that the mother failed to rebut the presumption of ineligibility by satisfying the exception found in 55 Pa.Code § 178.101(f)(1): "The person can reasonably be expected to be discharged from the institution and to return to that resident property."

■ The second exception to ineligibility relied upon by the mother is undue hardship. 55 Pa.Code § 178.101(f)(4). Petitioner argues that the Department erred in concluding that no undue hardship existed because she was unrepresented at any of the administrative proceedings and her son "took several actions which resulted in substantial property interests of hers

being taken away," thereby jeopardizing her entitlement to benefits. (Mother's Brief at 16.) Again, we note that, even though the mother may have an action against her son as her fiduciary, that is not before us here.

Further, she contends that the Hearing Officer gave an inadequate reason for dismissing the undue hardship claim:

[I]t is this Hearing Officer's finding that it would not result in an undue hardship on the [mother] because the uncompensated value of the home was valued for at least $90,000. The appellant has an uncompensated value of $89,999.

(R.R. 77.)

Here, there is evidence that the mother knew of the title transfer. In a notarized November 2, 1992 letter, she stated that "my son ... had my permission and my full knowledge and consent to transfer the title of my property ... from my name to his in order for him to obtain bank loans to remodel my home to accommodate myself and his family." (R.R. 50.) Further, although the Department notes that one of the exhibits offered was an October 23, 1992 letter of intent from the Langhorne Gardens Nursing Center to evict the mother (R.R. 20–21), no one presented evidence at the hearing that she would receive inadequate care and suffer undue hardship as a result of the denial of her application for nursing home care. (The mother was granted a stay of her discharge pending disposition of her discharge appeal.)

In addition, the Department argues that an individual cannot transfer resources for no consideration and then claim undue hardship when the nursing home asks to be compensated for providing skilled care. The Department notes that, even though what her son did was probably a breach of his duty as attorney-in-fact, his behavior should not vitiate the Department's actions regarding the application for nursing home care assistance. We must agree and conclude that the mother also failed to satisfy the undue hardship exception to ineligibility.

The Hearing Officer gave the son ample opportunity to rebut the presumption that the transfer was for purposes of

qualifying for assistance. The son, however, failed to satisfy any of the exceptions to ineligibility.

For the above reasons, we affirm the order of the Secretary.

## *ORDER*

**AND NOW,** this 15th day of July, 1994, the order of the Secretary of the Department of Welfare, dated July 1, 1993 at Case No. 090193214–001 is hereby affirmed.