501 A.2d 681

**In the ESTATE OF Elizabeth KREMPASKY (or) Krompaski.**

**Appeal of Lydia Elizabeth Vrablova WANAMAKER.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1984.

Filed Dec. 6, 1985.

Edward F. Peduzzi, Pittsburgh, for appellant.

Before BROSKY, WATKINS and HESTER, JJ.

WATKINS, Judge:

This case comes to us on appeal from the Orphans' Court Division of the Court of Common Pleas of Cambria County and involves the issue as to whether a valid joint tenancy with the right of survivorship was created in certain certificates of deposit prior to a decedent's death.

The decedent, Elizabeth Krempasky, died on June 8, 1979 at 2:45 P.M. while a patient at a hospital. She was 82 years of age at the time of her death. She died of heart failure and cardiovascular disease. In her will she devised the residue of her estate to her niece, Lydia Elizabeth Vrablova Wanamaker, who was also appointed executrix. The decedent owned a residence in Nanty Glo which was sold for $24,000. She also had four bank certificates of deposit worth $5,000 each which she kept in a metal box at her home. The executrix testified at trial that the certificates of deposit were not found in the metal box after decedent's death. Upon further inquiry the executrix discovered that the name of Anna A. Parana had been added to the four certificates on the very day of her death. The executrix then filed a petition requesting that the certificates of deposit be ordered returned to the estate as estate property. After hearing, the court below denied the petition and directed a verdict in favor of Parana. After exceptions to the order were dismissed by the court below, the executrix took the instant appeal.

At trial the executrix testified that she had come to Nanty Glo from Czechoslavakia in 1976, had lived with and cared for the decedent for several years prior to decedent's death, and had moved to Texas with the decedent where the

executrix had found a job. She stated that she had attempted to find employment in Nanty Glo, but could not do so. The decedent moved back to Nanty Glo a short time before her death. The executrix also produced the testimony of Louise Kachik, a neighbor and acquaintance of the decedent, and Thomas Sabo, Assistant Vice President of the United States Bank, Nanty Glo office, at which bank decedent had invested in the certificates of deposit. Ms. Kachik testified that she knew the decedent very well for five or six years, that she often took her to the doctor and hospital, and that on June 8, 1979, Anna Parana called her and asked her to take the decedent to the hospital. At the hospital she observed the decedent and described her condition as "unbelievable", "like a zombie", "dragged around" and "sick". She stated that the decedent was not herself at that time, but that Anna Parana said that there was nothing wrong with the decedent and she was brought home. The decedent died the next day. When asked to describe the relationship between decedent and Anna Parana, Ms. Kachik stated that, "it's everybody's relationship", "just like me and you would have or me and him or everybody. It was no lovey dovey thing, it was just that type of relationship."

▆ Appellant argues that the evidence establishes a confidential relationship and undue influence between Anna Parana and the decedent. The court below held that no confidential relationship nor had undue influence been established. When the circumstances make it clear that the parties to a transaction did not deal on equal terms, but that on the one side there was an overmastering influence, or, in the other, weakness, dependence or trust, justfully reposed, a confidential relationship exists. *Estate of Clark,* 461 Pa. 52, 334 A.2d 628 (1975). We agree with the court below that the relationship shown to exist between the decedent and Anna Parana was not a confidential one. Nor was any undue influence established.

▆ Appellant's second argument is that the addition of the name of Anna A. Parana to the four certificates of deposit by the bank after the decedent's death did not

create a valid inter-vivos gift and was, therefore, a nullity. Where a depositor creates a joint savings instrument at a bank or other financial institution with the right of survivorship and a signature card or other document is signed by both the depositor and the other party, a prima facie inter-vivos gift to the other party in a joint tenancy with the right of survivorship is established. *Cilvik Estate*, 439 Pa. 522, 267 A.2d 836 (1970). It is also possible to establish a joint tenancy with the right of survivorship in an account which was held in only one name by adding the name of the donee to the account. *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972).

▮▮▮ In the instant case the name of Anna A. Parana was added to the instruments by the bank on the very day of the decedent's death. The name was added pursuant to an authorization form containing the decedent's signature and brought to the bank by Anna Parana. Anna Parana had also prepared the authorization forms. A bank official testified that Anna Parana had brought the form to the bank in the "late afternoon", "about 3 o'clock" on the date of the decedent's death and the name of Anna Parana was added to the instrument between 3:00 P.M. and 4:00 P.M. when the bank closed. However, the testimony also revealed that the decedent died on June 8, 1979 at 2:45 P.M. Thus, when the addition of the other name to the certificates took place the decedent was dead.

"It is well established as the general rule that the death of the principal operates, as an instantaneous and absolute revocation of the agent's authority or power, unless the agency is coupled with an interest. Hence, any act done by the agent, as such, after the principal's death will not affect the estate of the latter." 3 Am Jur 2d 453 § 51.

It is well settled that the death of the principal puts an end to the agency and terminates the agent's authority to act for the principal unless the agency is coupled with an interest. *Provident Life & Trust Co. v. Spring Garden Ins. Co.*, 53 Pa. Superior 66 (1913). *1 P.L.E. Agency 25,*

*Page 494.* In our case the decedent died before her agents created the joint tenancy. Anna Parana had no interest in the certificates of deposit at the time of the decedent's death. Thus, her death terminated both Parana's and the bank's authority to change the account. For that reason we agree with the appellant's contention that the four certificates of deposit belong to the decedent's estate. Although appellee cites *5 P.L.E., Banks and Banking 65 page 235* for the proposition that an owner of a bank account can direct the bank to assign the account at any time, we do not find that principle controlling in the instant case where the assignment is carried out by others after the decedent's death.

Thus, we sustain the appeal and direct that the four certificates of deposit be awarded to the estate.