## IN the Matter of the ESTATE OF Merle Walter EASTMAN a/k/a Merle W. Eastman.

### Appeal of Barbara S. Eastman, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 13, 2000.

Filed Sept. 12, 2000.

Donald J. Rogala, Erie, for appellant.

Richard A. Lanzillo, Erie, for appellees.

BEFORE: KELLY, JOHNSON, and TAMILIA, JJ.

KELLY, J.:

¶ 1[c] Appellant, Barbara S. Eastman, brings this appeal from the order, judgment, and decree of the Erie County Court of Common Pleas, Orphans' Court Division, in favor of Appellees, Carrie Sue Crow and Kirk C. Eastman. Appellant asks us to determine whether the trial court erred when it declared that, at the time of decedent's death, the assets of a certain bank account passed by operation of law to Appellees. We hold that the decedent did not effect an *inter vivos* gift to Appellant of the account's assets. Accordingly, we affirm.

¶ 2 The trial court set forth the relevant facts and procedural history of this appeal as follows:

The matter comes before the court pursuant to Barbara S. Eastman's ... Petition to Determine Ownership of Accounts filed March 5, 1999. The facts of the instant matter reveal that on July 29, 1998, Merle W. Eastman executed a PNC Brokerage Self–Directed IRA Application for the purpose of opening a joint account with rights of survivorship with his daughter, Carrie Sue Crow, and his son, Kirk C. Eastman.... Upon receiving [their] signatures on the Account Application, Mr. Eastman secured the required signatures of a PNC Brokerage Principal and Investment Consultant who then assigned the Account Number 10160432.

Merle W. Eastman transferred $45,000.00 into the Account, which represented the proceeds received from the sale of Mr. Eastman's residence in Edinboro, Pennsylvania. Additionally, Mr. Eastman made arrangements for the transfer of assets valued at approximately $24,000.00 from his brokerage account with Solomon Smith Barney. Mr. Eastman was the sole contributor of funds to the Account, and there have

been no withdrawals or additional contributions since July 29, 1998.

On October 8, 1998, Merle W. Eastman married [Appellant]. On November 20, 1998, Mr. Eastman approached Richard R. Guerrini, an investment consultant with PNC Brokerage, to discuss changing the beneficiary designation with respect to the Account. [A] new account was to be funded by the transfer in kind of all assets in the brokerage account to the new account. Mr. Eastman then prepared another Account Application and an Investor Disclosure and Acknowledgment form. The Account Application named [Appellant] as "Joint Applicant" and indicated the account type as "joint with rights of survivorship." Merle W. Eastman and [Appellant] signed both documents at their residence that same evening. However said documents were never returned to Mr. Guerrini until after Mr. Eastman's death on February 2, 1999.

(Trial Court Opinion, dated June 4, 1999, at 1–2). The trial court determined that Appellant had failed to demonstrate through clear and convincing evidence that Merle W. Eastman transferred so much dominion and control over the proceeds of the original Account as to constitute an *inter vivos* gift of the funds in Account 10160432 to Appellant. Accordingly, the trial court denied Appellant's petition, declaring that the Account's assets passed by operation of law to Merle W. Eastman's daughter and son, Appellant having no right, title to, or interest in Account 10160432. *See* Trial Court Order, dated June 4, 1999. This timely appeal followed.

¶ 3 On appeal, Appellant presents the following question for our review:

WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT THE PNC BROKERAGE ACCOUNT NUMBER 10160432 PREVIOUSLY HELD BY MERLE W. EASTMAN, CARRIE SUE CROW AND KIRK C. EASTMAN AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP PASSED BY OPERATION OF LAW TO CARRIE SUE CROW AND KIRK C. EASTMAN UPON THE DEATH OF MERLE W. EASTMAN AND THAT PETITIONER BARBARA S. EASTMAN HAD NO RIGHT, TITLE OR INTEREST IN SAID PROPERTY.

(Appellant's Brief at 4).

¶ 4 Our standard of review of the findings of an orphans' court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as factfinder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree.

*In Re Estate of Harrison*, 745 A.2d 676, 678 (2000), *appeal denied,* —— Pa. ——, 758 A.2d 1200, 2000 WL 684196 (May 24, 2000) (internal citations and quotation marks omitted).

We will not disturb the trial court's findings absent a manifest error; we may modify the decree only if the findings upon which the decree rests are unsupported by the evidence or . . . a capricious disbelief of competent evidence.

*Matter of Estate of McCutcheon*, 699 A.2d 746, 749 (Pa.Super.1997) (quoting *In re Jones*, 442 Pa.Super. 463, 660 A.2d 76, 79 (1995), *appeal denied,* 543 Pa. 729, 673 A.2d 335 (1996)).

¶ 5 Appellant concedes that Chapter 63 of the Probate, Estates and Fiduciaries Code governs this matter. Appellant contends that she offered clear and convincing evidence of the decedent's intention to make a gift to her of an interest in the proceeds of the Account. Specifically, Ap-

pellant claims she adequately proved the decedent made an immediate gift of the proceeds of the Account by signing a new account application in the presence of Mr. Guerrini on November 20, 1998 and taking the application home to have Appellant sign it on the same date. Appellant insists that the actions of the decedent constitute clear and convincing evidence of an *inter vivos* gift of the funds in the Account, because at that time, she was vested with a degree of dominion and control over the existing Account consistent with joint ownership. Appellant reasons the return of the form was purely ministerial and either she or the decedent could have unilaterally returned the account application to the bank at any time following its execution. Appellant concludes she became the sole owner of the proceeds of Account 10160432 upon the decedent's death on February 2, 1999. We disagree.

■ ¶ 6 Ownership of funds in a joint account is governed by the Chapter 63 of the Probate, Estates and Fiduciary Code, which, in pertinent part, provides:

### § 6303  Ownership during lifetime

(a) **Joint account.**—A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.

20 Pa.C.S.A. § 6303(a). The official comment to Section 6303 explains:

The theory of these sections is that the basic relationship of the parties is that of **individual ownership of values attributable to their respective deposits and withdrawals;** the right of survivorship which attaches unless negated by the form of the account really is a **right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner.** That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy.

20 Pa.C.S.A. § 6303 Official Comment— 1976 (emphasis added). The official comment further states that there is an "assumption that a person who deposits funds in a multi-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit." *Id. See also Wilhelm v. Wilhelm,* 441 Pa.Super. 230, 657 A.2d 34, 37 (1995) (citing *id.*). The statute further states:

### § 6304  Right of survivorship

(a) **Joint account.**—Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created. . . .

20 Pa.C.S.A. § 6304(a).

■ ¶ 7 With respect to the creation of a valid *inter vivos* gift, this Court has stated:

Two elements must be shown to establish a valid *inter vivos* gift. First, there must be an intention to make an **immediate gift.** Second, there must be **actual or constructive delivery** to the donee such as will divest the donor of dominion and control of the subject matter of the gift.

*Lessner v. Rubinson,* 382 Pa.Super. 306, 555 A.2d 193, 197 (1989), *affirmed,* 527 Pa. 393, 592 A.2d 678 (1991) (internal citations omitted) (emphasis added). "Where a sole owner of a bank account **converts the account into a joint one** owned by himself and another, as evidenced by a duly signed signature card, the transaction is *prima facie* one of an *inter vivos* gift." *Id.* (quoting *In re Estate of Dzierski,* 449 Pa. 285, 288, 296 A.2d 716, 718 (1972)) (emphasis added). "[T]he mere handing of a bank book, even though accompanied by words showing an intention to make a gift of the bank account is not sufficient delivery to constitute a gift of that account." *Lessner,*

*supra* n. 5 (quoting *In re Kata's Estate*, 363 Pa. 539, 542, 70 A.2d 351, 353 (1950)).

¶ 8 Finally, we note:

[T]he death of the principal operates as an instantaneous and absolute revocation of the agent's authority or power, unless the agency is coupled with an interest. Hence, any act done by the agent, as such, after the principal's death will not affect the estate of the [principal].

*In the Estate of Krempasky*, 348 Pa.Super. 128, 501 A.2d 681, 683 (1985) (internal citation and quotation marks omitted). Thus, the principal's death terminates an agent's authority to act for the principal unless the agency is coupled with an interest. *Id.* (holding principal's death terminated claimant's and bank's authority to change account).

¶ 9 In the instant case, the decedent, Merle W. Eastman, established a joint account in July 1998 with Appellees, his son and daughter, as joint tenants with rights of survivorship. In October 1998, the decedent remarried. On November 20, 1998, the decedent approached a consultant with his brokerage house to discuss the creation of a new account, naming Appellant, his new wife, as the joint owner of the new account. The new account was to be funded by the transfer in kind of all assets in the existing Account 10160432. To that end, the decedent prepared a new account application and investor disclosure and acknowledgment form, naming Appellant as "joint applicant." The decedent then took the application home to have Appellant sign it, which she did. The application, however, was not returned to the bank until after the decedent's death in February 1999.

¶ 10 When the decedent died, the new account had not yet been opened and no assets had been transferred from Account 10160432 to the new account. This is so because neither party had ever returned the signed application to the bank until after the decedent's death. Further, the decedent did not execute directions to clarify his intent with respect to the assets in Account 10160432. Additionally, the decedent did not give Appellant power of attorney to act as his agent with respect to his financial affairs. We conclude, therefore, that the mere signing of the application did not satisfy the bank's requirements for effecting a change in the beneficiary of the Account. As the trial court noted:

[W]hen Merle W. Eastman first opened the Account [10160432], he filled out a document entitled, "Self–Directed IRA Application" naming [his son and daughter] as Primary Beneficiary Designations. Relative to changing designated beneficiaries, this document provided:

**Important Notes:**

1. Beneficiary Change: If prior beneficiary designation[s] are to remain in effect, the name[s] of the beneficiaries must be restated. **The last beneficiary designation will control the distribution of IRA funds upon your death**.

\* \* \*

4. You may change the beneficiary designation by **filing a new designation in writing and mail to PNC Brokerage Corp.**

These instructions, which [the decedent] read and understood as evidenced by his signature on such application, clearly direct [the decedent] to complete a new designation in writing and return it to PNC. However, as previously noted, the only action taken by [the decedent] with respect to a change in the designated beneficiaries was to fill out and execute a new [a]ccount [a]pplication with [Appellant] named as "Joint Applicant." The Application was not returned to Mr. Guerrini at PNC until after [the decedent's] death on February 2, 1999.

(Trial Court Opinion, at 7–8) (emphasis in original).

¶ 11 We agree with the trial court that the decedent did not take the neces-

sary steps to complete the transaction. He did not return the new account application to the bank or direct transfer of funds from the existing Account 10160432. In fact, neither party returned the signed application to the bank until after the decedent's death. As sole owner of the original Account 10160432,[1] the decedent failed to convert the funds into a joint account owned by himself and Appellant. The mere signing of the application for a new account, even if it had been accompanied by words showing an intention to make a gift of the bank account is not sufficient delivery to constitute a gift of that account. *See Lessner, supra* n. 5 (citing *Kata's Estate, supra* ). Thus, Appellant has not demonstrated the requisite **delivery** of an *inter vivos* gift. *See also In re Reist's Estate*, 158 Pa.Super. 281, 44 A.2d 847, 849 (1945) (holding delivery indispensable requisite without which gift fails, regardless of consequences).

■ ¶ 12 Additionally, Appellant has not demonstrated the necessary **intent** of the decedent to make an **immediate gift**. *See Lessner, supra* (citing *Dzierski, supra* ). To the contrary, Appellant's evidence indicates with equal force that the decedent intended to give Appellant only a right of survivorship upon his death. *See In re Reist's Estate, supra* at 848 (stating evidence must show unequivocal intent to invest donee with right of disposition of property beyond recall of donor). Absent the appropriate evidence of intent to make an immediate gift and the requisite delivery, Appellant's claim that the funds constituted an *inter vivos* gift must fail. *See Lessner, supra* ; *In re Reist's Estate, supra.*

¶ 13 We distinguish the recent case, *In re Estate of Eugene A. Golas, Deceased*, 751 A.2d 229 (2000) (holding decedent's intent clearly established when he substantially complied with provisions for changing his beneficiary; effect given to his

intent). In *Golas*, the decedent wanted to fund a trust with specific assets. To accomplish this plan prior to his death, Golas met with his attorney, discussed changing the designation of beneficiaries of the specific assets, executed a will on May 1, 1997, and executed two separate forms to change the beneficiary designation of certain assets as planned. Golas also telephoned his broker, who was away on vacation. After speaking with another broker, Golas learned that he could not effectuate a change of beneficiary *via* telephone. So, he requested the necessary form, which the broker promised to send immediately.

¶ 14 On May 4, 1997, Golas was admitted to the hospital, suffering from complications related to his cancer. During his hospital stay, he again called his broker who had returned from vacation. Golas was upset because he had not yet received the change of beneficiary form as promised. His broker assured Golas that a form would be sent immediately. Golas died on May 8, 1997, without having received or executed the change of beneficiary for his IRA, one of the assets intended to fund the estate trust. The trial court held that Golas had substantially complied with the change of beneficiary provision of his IRA agreement. The issue on appeal was whether sufficient evidence had been presented to support the trial court's determination of substantial compliance. On appeal this Court applied principles analogous to cases involving insurance policies and followed the equitable principle that the law "will give effect to the intent of the insured if he has done all he can reasonably do under the circumstances to comply with the terms of the policy, which permit a change of beneficiary." *Id.* at ¶ 10 (citations omitted). Accordingly, the trial court's order was affirmed and effect was given to Golas' intent which was, under the circumstances of the particular case, clearly manifested.

---

1. The parties do not dispute that the decedent was the sole contributor of assets to the original Account 10160432, and, therefore, the sole owner during his lifetime of the funds in that Account. *See* 20 Pa.C.S.A. § 6303(a).

¶ 15 In the present case, however, it was the decedent's own action or, should we say inaction, which prevented the creation of the new account and the transfer of funds from the existing Account 10160432. Here, the decedent held the account application in his possession for over two months without returning it to PNC Brokerage to complete the transfer. Appellant testified that the signed application sat on top of the dishwasher in the kitchen for several months, while she and the decedent for one reason or another delayed in returning it to the bank (N.T. Hearing, 3/29/99, at 69–71; R.R. at 114a–116a). In fact, Appellant finally returned the application to the bank only after decedent's death.

¶ 16 To the extent that Appellant vaguely suggests she was acting as the decedent's agent when she returned the application following his death, or that the bank could have acted on that application, this suggestion is not supported by controlling law. *See Krempasky, supra.* The decedent had died before the new joint account could be created. Upon his death, neither the bank nor Appellant could act as the decedent's agent for purposes of creating the new account, as the death of the principal operates as an instantaneous and absolute revocation of the agent's authority or power, unless the agency is coupled with an interest. *Id.* Here, Appellant has failed to demonstrate that either she or the bank had any beneficial or other legal interest in the funds deposited in Account 10160432 at the time of the decedent's death.[2] Thus, Appellant's contention that the change in joint tenancy was purely ministerial warrants no relief.

¶ 17 Based upon the foregoing, we hold that the trial court correctly denied Appellant's claim. The decedent did not effect an *inter vivos* gift to Appellant of the assets in Account 10160432. Accordingly,

we affirm the trial court's order, judgment, and decree in favor of Appellees.

¶ 18 Order affirmed.

---

2. Appellant does not argue nor do we address her right, if any, to take an elective share in the decedent's estate, which may have accrued as a result of her brief marriage to the

decedent. *See Wilhelm, supra* (citing 20 Pa. C.S.A. § 2203(4)). *See also* § 2203 Official Comment 1978.