Dora STEINBERG, Petitioner,

v.

## DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 16, 2000.
Decided June 27, 2000.
Publication Ordered Sept. 12, 2000.

Edwin M. Matzkin, Jenkintown, for petitioner.

Diana C. Clark, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

McGINLEY, Judge.

Dora Steinberg (Mrs. Steinberg) petitions for review from an order of the Commonwealth of Pennsylvania, Department of Public Welfare (DPW) that upheld the order of the DPW Bureau of Hearings and Appeals (Bureau) which denied Mrs. Steinberg medical assistance and nursing home care benefits (assistance) [1] until October 1, 1998.

---

1. Congress established the Medicaid program in 1965 in Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, to provide federal financial assistance to states that reimburse certain costs of medical treatment for needy individuals. *Oriolo v. Department of Public*

On September 5, 1983, Mrs. Steinberg's husband died, and their jointly held assets became Mrs. Steinberg's property. On December 14, 1983, Mrs. Steinberg opened a joint account at Dean Witter Reynolds, Inc. (Account) with her son, George Steinberg (Steinberg), and her daughter, Marsha Gross (Gross). On March 12, 1984, Mrs. Steinberg, Gross, and Steinberg signed a joint account agreement with right of survivorship which allowed any of the three signers to the Account to withdraw any and all funds from the Account. The Account's opening balance was $120,000. Allegedly, she made a gift of $40,000 to each of her children. In December 1994, the account totaled approximately $241,122. In January 1995, $199,608 was withdrawn leaving a balance of approximately $41,513.

On July 10, 1995, Mrs. Steinberg was admitted to the Saunders House Nursing Home. Mrs. Steinberg was eighty-eight years old at the time. On January 9, 1997, Mrs. Steinberg applied for assistance retroactively from November 1, 1996. On March 11, 1997, the Montgomery County Assistance Office (CAO) denied the application on the basis that the $199,608 had been transferred from Mrs. Steinberg's ownership without fair consideration. Mrs. Steinberg appealed. On May 8, 1997, a hearing officer for the Bureau sustained the appeal. DPW affirmed the hearing officer's final administrative action order on May 30, 1997.

On or about June 10, 1997, the CAO requested reconsideration. On June 26, 1997, DPW accepted the petition for reconsideration. On January 2, 1998, DPW set aside the final administrative action order and denied Mrs. Steinberg's appeal. The Secretary's final order held that no evidence was presented as to the dollar amount or percentage of the Account that was given as a gift. The final order also stated that the totality of the circumstances led to the conclusion that Mrs. Steinberg's children's names were placed on the Account solely as an estate planning maneuver and the resources were Mrs. Steinberg's during her lifetime.

On January 21, 1998, Mrs. Steinberg petitioned for review with this Court. On April 24, 1998, this Court remanded the case to the Bureau for a new hearing. At the June 10, 1998, hearing, Virginia Constantini (Constantini) of the CAO testified that she reviewed Mrs. Steinberg's application and discovered that her tax returns indicated substantial income from interest and dividends that came from the Account which was not included among her assets. After Constantini inquired of Steinberg, he provided account information and related that approximately $199,000 had been withdrawn and given to Steinberg and Gross. Constantini issued a pending notice that the CAO's position was that there was a presumption that Mrs. Steinberg owned the account. After Steinberg submitted a rebuttal, the CAO determined that this withdrawal was a transfer for less than fair consideration which resulted in Mrs. Steinberg's ineligibility for assistance until October 1, 1998. Constantini concluded that there was never a gift of ⅔ of the account because Mrs. Steinberg did not have the intent to make a gift and never completed delivery because she still had control of the funds. Notes of Testimony, June 10, 1998, (N.T.) at 6–10; Reproduced Record (R.R.) at 110a–114a.

*Welfare*, 705 A.2d 519, 520 (Pa.Cmwlth.1998). Assistance may be provided to those classified as "medically needy", whose income and resources are insufficient to meet necessary medical costs. 42 U.S.C. § 1396(a)(10)(C). States providing this coverage must establish eligibility standards for the medically needy. 42 U.S.C. § 1396(a)(17). Pursuant to Section 442.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 442.1, this section added by Act of July 31, 1968, P.L. 904, DPW is authorized to establish eligibility standards for the medically needy. Under DPW regulations, an applicant may be eligible for medically needy assistance if the applicant has available resources of $2,400 or less. 55 Pa.Code Chapter 178, Appendix A.

Steinberg[2] testified that the Account was established in accordance with his father's wishes in that his mother's assets were to go to the children and in return the children would care for their mother. N.T. at 26–27; R.R. at 130a–131a. Steinberg testified that the withdrawal was necessary because of personal financial reverses and his brother-in-law's health. N.T. at 33; R.R. at 137a. On cross-examination, Steinberg admitted that neither he nor Gross contributed to the Account. N.T. at 40; R.R. at 144a.

The hearing officer agreed with the CAO that Mrs. Steinberg's intent when she opened the account was unclear and that the withdrawal made by her children was to qualify Mrs. Steinberg for assistance. The hearing officer found that Mrs. Steinberg did not successfully rebut the presumption that Mrs. Steinberg transferred resources without fair consideration. The hearing officer denied Mrs. Steinberg's appeal on August 21, 1998. On August 24, 1998, the Bureau director issued a final administrative action order affirming the hearing officer's decision. After granting Mrs. Steinberg's request for reconsideration, the Secretary of DPW upheld the August 21, 1998, decision on August 10, 1999.

▇ Mrs. Steinberg contends that DPW erred when it denied her assistance. She contends she made the gifts from the Account to each of her children and removed those funds as a resource.[3]

▇ An applicant bears the burden of establishing eligibility for assistance. *Bird v. Department of Public Welfare*, 731 A.2d 660 (Pa.Cmwlth.1999). A resource is available for purposes of determining eligibility for assistance if there are proof of ownership and a right to dispose of the resource. 55 Pa.Code § 178.4. In order to prevent an applicant from improperly disposing of

otherwise available assets to qualify for assistance, certain transfers of assets affect eligibility. DPW regulations provide a "look-back" period of thirty-six months from the date an applicant is both institutionalized and has applied for assistance. 55 Pa.Code § 178.104(c). If an applicant disposes of assets for less than fair market value during the "look-back" period, DPW presumes that the transfer was made to qualify for assistance. The applicant may rebut the presumption by establishing that the individual intended to dispose of the assets for fair market value, the assets were transferred exclusively for a purpose other than to qualify for assistance, or the assets transferred for less than fair market value were returned to the applicant. 55 Pa.Code § 178.104(d)(3). If the applicant does not rebut the presumption, the applicant is ineligible for assistance for a period equal to the total value of all assets transferred divided by the average monthly cost to a private nursing home patient at the time of the application. 55 Pa.Code § 178.104(d).

▇ Mrs. Steinberg did not attempt to rebut the presumption. Rather, Mrs. Steinberg contends that the withdrawal included funds gifted to Steinberg and Gross, approximately two-thirds of the amount of the Account, at the time it was opened. Mrs. Steinberg believes that the account application form for the joint agreement with the right to survivorship signed by her and her two children established that each account holder had a ⅓ interest in the account, and the gifts and the Account were *fait accompli* more than twelve years before she applied for assistance, and that her children's names were not merely added to an existing Dean Witter account but a new one was created in 1983. Essentially, according to Mrs.

---

**2.** Mrs. Steinberg was not competent to testify.

**3.** Our review requires that we determine whether DPW's adjudication comports with the applicable law, whether its findings are

supported by substantial evidence, and whether any constitutional rights were violated. *Williamson v. Department of Public Welfare*, 166 Pa.Cmwlth. 79, 646 A.2d 38, 39 (1994).

Steinberg, the gift took place prior to the opening of the Account.

It is well-settled law in Pennsylvania that the elements of a gift are (1) the intention of the donor to make an immediate gift; (2) the completed delivery of the gift (where the donor releases dominion and control over the property in question) and (3) acceptance by the donee. *Sipe's Estate*, 492 Pa. 125, 422 A.2d 826 (1980). Here, the hearing officer determined that there was no evidence that established that Mrs. Steinberg intended to make a gift of two-thirds of the funds when the Account was opened. The hearing officer specifically found that Steinberg's testimony was not credible. The hearing officer is the ultimate factfinder and must resolve conflicts in the testimony and may reject the testimony of any witness. *Geriatric & Medical Services, Inc. v. Department of Public Welfare*, 151 Pa.Cmwlth. 209, 616 A.2d 746, 747 (1992).[4]

In *Breitkreutz v. Department of Public Welfare*, 699 A.2d 1378 (Pa.Cmwlth.1997), this Court resolved a similar situation. DPW denied assistance to Mary Hayduchak (Mrs. Hayduchak) for 9.4 months because it found that three certificates of deposit Mrs. Hayduchak jointly owned with each of her three daughters had been cashed by the daughters to qualify Mrs. Hayduchak for assistance. Theresa Breitkreutz (Breitkreutz), one of the daughters, petitioned for review on behalf of her deceased mother. *Breitkreutz*, 699 A.2d at 1380. This Court applied Section 6303(a) of the Probate, Estates, and Fiduciaries Code and determined that the jointly held certificates of deposit belonged to Mrs. Hayduchak because she contributed the funds. *Breitkreutz*, 699 A.2d at 1381. Further, this Court rejected Breitkreutz's contention that the hearing officer erred when he rejected her testimony that Mrs. Hayduchak had intended to make a gift of the certificates of deposit to her daughters because the hearing officer was the factfinder. *Breitkreutz*, 699 A.2d at 1382.

Although Section 6303(a) does not apply here, because of the type of account in question, Section 6303(a) contains similar language to 55 Pa.Code § 178.51(b)[5] in that the ownership of an account is determined by the net contribution. It was not error for the Bureau and for the Secretary of DPW to conclude Mrs. Steinberg, the only contributor, was the owner for assistance purposes.

Because Mrs. Steinberg transferred almost $200,000 from the Account, which DPW determined she owned, for less than fair market value during the "look-back" period, DPW presumed that the transfer of resources was made to qualify for assistance. DPW determined that Mrs. Steinberg did not rebut this presumption and properly denied assistance until October 1, 1998, pursuant to 55 Pa.Code §§ 178.104(d) and 178.105(g). This deter-

---

4. Mrs. Steinberg argues that the signature card established that the account was joint with a right of survivorship and a *prima facie* gift. However, Section 6303(a) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 6303(a), enacted in 1976, states: "A joint account belongs, during the lifetime of all parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent." Section 6303 may not apply here because account is defined as "a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangements." 20 Pa.C.S. § 6301. Here, the Account is a brokerage account. However, the

accounts referred to in *Sivak's Estate*, 409 Pa. 261, 185 A.2d 778 (1962) and *Estate of Bowser*, 485 Pa. 209, 401 A.2d 733 (1979), on which Mrs. Steinberg relies for support, were joint savings accounts.

5. DPW regulation, 55 Pa.Code § 178.51(b), provides:

If an applicant/recipient is a joint owner of liquid resources, such as but not limited to, a checking or savings account, each owner is considered to own a share proportional to his net contribution to the resource. The applicant/recipient shall verify net contributions. If there is no evidence of net contributions, each owner is presumed to own an equal share.

mination was supported by substantial evidence and was not error.

Accordingly, we affirm.

## ORDER

AND NOW, this 27th day of June, 2000, the order of the Department of Public Welfare in the above-captioned matter is affirmed.