# Deutsch, Larrimore & Farnish v. Johnson

C.P. of Philadelphia County, July Term 1996, no. 02846.

*Dale G. Larrimore* and *Thomas S. Farnish,* for plaintiff.
*Alan C. Gershenson,* for garnishee.
*Leonard Sarner* and *Joshua Sarner,* for intervenor.

McINERNEY, *J.,* May 21, 2001—Plaintiff Deutsch, Larrimore & Farnish appeals from the grant of intervenor Ruth S. Libros' petition to intervene, stay, and set aside writ of execution.

## BACKGROUND

In January 1994, Libros opened a Morgan Stanley Dean Witter brokerage account. When she opened the account, Libros named defendant Joyce Johnson as well as Joel B. Sarner as joint tenants. N.T. 12/13/00 at 31. Johnson and Sarner are Libros' daughter and son. N.T. 12/13/00 at 9. Although the account was in the names of all three parties jointly, neither Johnson not Sarner ever contributed any funds to the brokerage account. *Id.* at 10-11, 31. It was undisputed that all of the funds were contributed by Libros. *Id.* at 10, 19-20.

Libros funded the MSDW account with sums from prior investment accounts, some of which she had held solely, some of which she had held jointly with either Johnson or Sarner. *Id.* at 11. Libros never communicated to Johnson or Sarner the existence of the prior securities or brokerage accounts. *Id.* at 12. Johnson and Sarner first learned that the securities had been so purchased or registered when the MSDW account was opened. *Id.* at 26.

Libros testified credibly that she never intended to give any present ownership interest in the account to Johnson and Sarner, but rather intended to permit them to access the funds to care for her should she become incapacitated, and as an estate planning device to ensure that they would share equally in the account upon her death. *Id.* at 12, 15. Libros wished to set up the account in this manner because she had enjoyed an identical arrangement with her own mother. *Id.* at 12. At the time Libros opened her MSDW account, she expressed to William L. Mezey, her MSDW brokerage account executive, that she wished that so long as she was alive and in full control of her faculties, she would retain completely the ownership of, control of, and access to the account. The children were to acquire an ownership interest in the funds and securities in the account only upon her death. *Id.* at 15-16. Mezey advised Libros that a brokerage account established in accordance with the terms of the joint account agreement would meet all the conditions and provisions Libros requested. *Id.* at 16-17, see exhibit A to intervenor's trial brief. Libros then took the agreement for her children's signatures. She informed them that they would have no ownership rights whatsoever during her lifetime, but that upon her death they would receive equal shares, and if necessary could use funds in the account to take care of her medical and/or other needs in the event of an emergency. *Id.* at 17-18.

For all intents and purposes the account belonged to Libros. From time to time, Libros issued checks and made withdrawals upon the account. At no time did either Johnson or Sarner ever issue any checks or make any withdrawals. *Id.* at 20. Libros earned and received all dividends and interest. Only Libros realized capital gains

and losses from the funds, and she alone reported such gains and losses on securities in the joint account on federal, state and city income tax returns. *Id.* at 23. For many years, all the securities in the MSDW account have been in the street name of MSDW.[1] *Id.* at 13, 45. MSDW sent its monthly and yearly account statements to Libros alone, and never sent any account statements to Johnson or Sarner. *Id.* at 19, 26. Libros maintained possession and control of the checkbook under which checks could be issued against the account. *Id.* at 17, 26. The account agreement authorized Libros, Johnson and Sarner to sell securities in the MSDW account, but if MSDW received conflicting instructions regarding the account, it would freeze the account until it received consistent written instructions from all parties. *Id.* at 36; garnishee's answers to interrogatories no. 15. Approximately two years ago, at Libros' instruction, MSDW added to the account an operational memo stating, "Do not pay out funds without approval of Mrs. Libros."[2] *Id.* at 34-35; garnishee's answers to interrogatories no. 9(b). By letter dated October 3, 2000, after this action was filed, Libros informed MSDW not to pay out any funds without her approval. *Id.* at 36.

On March 5, 1997, Deutsch obtained a judgment against defendants Joyce Johnson and William Johnson in the amount of $300,000. To satisfy the judgment, Deutsch[3] filed a praecipe for a writ of execution on the

---

1. That is, the securities were held in MSDW's name, not the account holders'. N.T. 12/13/00 at 45.

2. The "operational memo" was entered into the computer system but not kept as a paper record.

3. The record does not clearly reveal either the date the plaintiff filed for the writ of execution or the date the writ was issued. Accord-

MSDW account. On October 17, 2000, Libros countered with a petition to intervene, stay and set aside the writ of execution. After ·a hearing on December 13, 2000, on March 21, 2001, this court granted Libros' petition, and stayed and set aside the writ. On March 22, 2001, Deutsch timely appealed. In response to this court's order pursuant to Pa.R.A.P. 1925(b), Deutsch filed a concise statement alleging generally that this court erred by granting the petition.[4]

## DISCUSSION

Ownership of funds in a joint bank account is governed by the Multiple Party Accounts statute, 26 Pa.C.S. §6301 et seq. Pennsylvania's MPA statute derives from the Uniform Probate Code (1969 Act) §6-101 et seq. Pennsylvania's version of the statute provides:

"Section 6303 Ownership during lifetime.

"(a) A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent." 20 Pa.C.S. §6303(a).

---

ing to plaintiff's reply to Libros' trial memo, plaintiff filed for a writ of execution on September 23, 2000. In contrast, the docket shows that plaintiff filed a praecipe for a writ of execution on July 12, 2000. The files of the prothonotary of Philadelphia County contain a writ of execution embossed with the prothonotary's seal and dated July 12, 2000, but date-stamped September 8, 2000. We are at a loss to explain the discrepancies. Fortunately, this case does not turn on the precise date the writ was praeciped or issued.

4. Because appellant's 1925(b) statement extends over seven pages, for practical reasons it cannot be repeated *verbatim* here.

Our Supreme Court has not spoken on the issue of the application of the MPA statute where the account is a brokerage account, rather than a "bank" account.[5] The Superior and Commonwealth Courts have each once addressed the issue with different results. In *Steinberg v. Department of Public Welfare*, 758 A.2d 734, 737 (Pa. Commw. 2000), Dora Steinberg appealed the Department of Public Welfare's determination that she was ineligible for medical and nursing home assistance because her assets were too great. Steinberg argued that she had given away two-thirds of the assets in her brokerage account to her children when she established the account as a joint account with her children. *Id.*, 758 A.2d at 734. As with Libros, Steinberg had deposited all the funds in the account. *Id.*, 758 A.2d at 737. The Commonwealth Court held, in rejecting Steinberg's argument, that although the MPA statute did not apply to brokerage accounts, the court reasoned by analogy to that statute that each owner possessed a share of the account in proportion to each owner's contribution. None of Steinberg's children had contributed to the account, therefore they had no owner-ship interest at the time the account was opened absent

---

5. Three states that have adopted identical portions of the Uniform Probate Code have reached the opposite result holding, *i.e.,* that the MPA statute does not govern brokerage accounts. See *Berg v. D.D.M.,* 603 N.W.2d 361, 363-64 (Minn. Ct. App. 1999); *In re Estate of Hayes,* 941 S.W.2d 630, 633 (Mo. Ct. App. 1997); *Matter of Estate of Ashe,* 117 Idaho 266, 787 P.2d 266, 268 (Idaho 1990); *Matter of Estate of Bogert,* 96 Idaho 522, 531 P.2d 1167, 1170-71 (Idaho 1975). While strictly interpreting the language of the MPA it is certainly possible to come to that conclusion; the language of the MPA is not so precise, and this court was not persuaded by their reasoning.

evidence of Steinberg's intent to give them an ownership interest. *Id.* The court concluded that DPW did not err by concluding that Steinberg lacked the intent to give the funds to her children. *Id., 758* A.2d at 737-38.

The only other reported Pennsylvania case we could locate relative to the application of the MPA to brokerage accounts began with the plaintiff conceding the applicability of the MPA. In *In re Estate of Eastman,* 760 A.2d 16 (Pa. Super. 2000), a widow petitioned to determine the ownership of a PNC brokerage account that her deceased husband held jointly with his son and daughter. *Id.* at 17-18. The son and daughter were not her children. *Id.* The deceased husband had established the account in July of 1998. *Id.* at 17. He married the petitioner, his subsequent widow, in October 1998. *Id.* at 18. After the marriage, he filled out a new brokerage account application naming the widow as the joint owner with rights of survivorship. *Id.* Although the deceased husband and the widow both signed the application, they never delivered it to the brokerage. *Id.* The widow conceded that the Multiple Party Account statute applied to the brokerage account, and the Superior Court made no comment to the contrary. *Id.* The MPA statute provides that upon the death of a party to a joint account, the funds remaining pass to the survivors unless there is clear and convincing evidence of a different intent at the time the account was established. 20 Pa.C.S. §6304(a). The Superior Court applied the MPA statute to the case and determined that the widow had failed to produce clear and convincing evidence that the deceased husband had intended other than for his son and daughter to take the remnants

of the account as survivors. Under the MPA statute's dictate, the account passed to his son and daughter.

In this case, both parties argued the *Steinberg* decision supported their respective positions. Deutsch cited *Steinberg* for the fact that the Commonwealth Court stated that the MPA does not apply to brokerage accounts. However, having said that, the Commonwealth Court went on to apply and analyze the facts in *Steinberg* as if the MPA did apply. This court agrees with the Commonwealth Court's logical extension of that definition. There is no reason why in this day and age where on a practical level banks act as brokers and brokers act as banks to make this distinction.

Furthermore, the Commonwealth Court interpreted the statute very narrowly. Neither "account" nor "financial institution" is narrowly defined in the MPA statute. The MPA statute's definition of account specifically includes the catchall phrase, "and other like arrangements." 20 Pa.C.S. §6301. Similarly, the definition of financial institution, while listing several specific sorts of institutions, includes the words, "without limitation." *Id.* This statute was enacted in 1976. Certainly we have room today, as the Superior Court all but conceded, for broker accounts to be encompassed by the MPA.

In this case, Deutsch, Larrimore & Farnish has essentially claimed that Libros gave an immediate joint interest in the entire MSDW account to her son and daughter when she established the account, and they may therefore attach and execute on the account. Under Pennsylvania common law, to establish that Libros gave a joint interest in the account to Johnson, the plaintiff would

have had to prove that Libros intended to make an immediate gift, and actual or constructive delivery such that either (a) Libros was divested of all dominion and control, or (b) Johnson was invested with so much dominion and control of the MSDW account as would be consonant with joint ownership. *Estate of Eastman,* 760 A.2d at 19.

Deutsch did not establish that Johnson had any dominion or control over the account. Johnson never withdrew funds or wrote any checks on the account. She never received dividends or interest, realized capital gains or losses, received any account statements, or even possessed the checkbook. What is more, Libros specifically instructed MSDW that it should not pay out any sums without her approval. If Johnson had so much as tried to alter Libros' instructions, MSDW would have frozen the account. It was abundantly clear from Libros' very credible testimony that she at all times retained total control of the funds and intended matters to remain that way until her death or incapacity. On these facts, one could hardly say that Libros invested Johnson with dominion and control consistent with ownership.

Regardless of whether the MPA controls or not, plaintiff failed to prove that Libros intended to give Johnson and Sarner any present interest. It is beyond dispute that Libros contributed and deposited all the funds and securities in the account. In addition, this court determined as a matter of credibility that when she designated the account as a joint account with rights of survivorship, Libros clearly intended that designation as a mere estate planning tool and a wise provision for when she could

no longer care for her own affairs. She admitted what the court had determined in *Steinberg:* that she never intended to give her children an immediate gift.

Perhaps more than in other areas of law, the law of property must predictably follow the public's expectations. Under common law, as well as drawing an analogy to the MPA statute, as did the Commonwealth Court in *Steinberg,* courts must look to who contributed the funds and the parties' intent. In the case before us, the answer to both questions is clear. Libros never intended to give Johnson a present interest in the account and Libros' assets should not be reachable by Johnson's creditors.

For the foregoing reasons, this court's order should be affirmed.