DEUTSCH, LARRIMORE
& FARNISH, P.C.,
Appellant,

v.

Joyce & William JOHNSON and
Morgan Stanley Dean
Witter, Inc.

In re: Petition to Intervene, Stay and Set Aside Writ of Execution as to Non–Judgment Debtor Property, Filed By Ruth S. Libros, Intervenor, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 24, 2001.

Filed Jan. 22, 2002.

---

**1.** The dissents posit that there is no difference between school police officers and other school staff for *Miranda* purposes. As noted by the majority, however, pursuant to the authorizing statute school police officers may be vested with the full authority of municipal police officers, including the power of arrest. *See* 24 P.S. § 7–778. Indeed, at least one of the school police officers involved here possessed just such authorization. *See In re Appointment of School Police Officer for the East Stroudsburg Area Sch. Dist.*, 4603 Misc. Civ.1998 (C.P. Monroe July 14, 1998). As *Miranda*'s underlying concern is with the compulsion inherent in police custodial questioning, I find highly material the distinction between educators and those operating under color of police authority and possessing general police powers including the power of arrest.

Dale G. Larrimore, Philadelphia, for appellant.

Leonard Sarner, Philadelphia, for Libros, appellee.

Before JOHNSON, TODD, and KELLY, JJ.

TODD, J.

¶ 1 Deutsch, Larrimore & Farnish, P.C. ("Deutsch") appeals the order granting Ruth S. Libros' Petition to Intervene, Stay, and Set Aside Writ of Execution. We affirm.

¶ 2 In 1994, Libros, an intervenor in the present action, opened a brokerage account with Morgan Stanley Dean Witter. The account was set up as a joint account between Libros and Joyce Johnson and Joel B. Sarner, her daughter and son, apparently so that her children could make withdrawals if she became incapacitated, and as an estate planning device. It is undisputed that Libros contributed all the money to the brokerage account. In 1997, Deutsch obtained a judgment against two individuals, including Johnson, for $300,000. To satisfy the judgment, Deutsch filed a Praecipe for a Writ of Execution on the brokerage account. Libros countered with a Petition to Intervene, Stay, and Set Aside Writ of Execution.

¶ 3 Following a hearing on Libros' petition on December 13, 2000, the trial court, by the Honorable Patricia A. McInerney, granted the petition, and stayed and set aside the writ. The trial court concluded that under Chapter 63 of the Probate, Estates and Fiduciaries Code dealing with multi-party accounts, 20 Pa.C.S.A. § 6301 *et seq.* (the "Multi–Party Accounts Statute"), the joint account belonged entirely to Libros, as she was the sole contributor to it. Further, the court concluded that even if the statute did not apply, under common law principles, the evidence showed that Libros retained full dominion and control over the account and thus Libros did not intend to give Johnson any present interest in the account. Deutsch timely appealed this determination.

¶ 4 On appeal, Deutsch argues that (1) the Multi–Party Accounts Statute does not apply to brokerage accounts, and (2) Libros made an *inter vivos* gift of one-third of the brokerage account to Johnson. We find that the Multi–Party Accounts Statute does apply and, therefore, we affirm.

¶ 5 Under Section 6303 of the Multi–Party Accounts Statute, "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent." 20 Pa.C.S.A. § 6303(a). Therefore, under Section 6303, because Libros was the only contributor to the joint brokerage account, its assets would belong solely to her.

¶ 6 However, Deutsch argues that Libros' brokerage account does not fall within the statute's definition of account. Under the statute, an "account" is defined as "a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, saving account, certificate of deposit, share account and other like arrangements." 20 Pa. C.S.A. § 6301. Further, "financial institution" is defined as "any organization authorized to do business under State or Feder-

al laws relating to financial institutions, including, without limitation, banks and trust companies, savings banks, building and loan associations, savings and loan companies or associations and credit unions." *Id.* Arguably, a brokerage account with an investment company does not meet these definitions.

▬ ¶ 7 In concluding that the Multi–Party Accounts Statute, specifically section 6303, applies to a brokerage account, the trial court relied on *In re Estate of Eastman*, 760 A.2d 16 (Pa.Super.2000). In *Eastman*, the decedent had contributed cash and other assets to a "PNC Brokerage Self–Directed IRA" account, set up jointly with his two children, with rights of survivorship. Following his death, the decedent's wife asserted he had made an *inter vivos* gift to her of the assets in the account. She conceded that the Multi–Party Accounts Statute applied to the account, and the Court, as an initial part of its gift analysis, applied Section 6303 to conclude that the joint account was solely the property of the decedent. *Id.* at 19, 21 n. 1. The Court then went on to conclude that the decedent, as sole owner, had not made a gift of the account to his wife. *Id.* at 22.

¶ 8 Deutsch does not attempt to distinguish *Eastman* from the instant case. Rather, as the appellant in *Eastman* conceded that the Multi–Party Accounts Statute applied, and thus the Court did not fully analyze its application, Deutsch im-

plies that the case is not binding. (Brief for Appellant, at 12.) We reject this contention. Even though the *Eastman* Court was not forced to analyze the issue because it was conceded by the appellant, the Court *did* apply Section 6303(a) to conclude that the decedent was the sole owner of the challenged joint brokerage account. *Id.* at 19, 21 n.1. Thus, regardless of whether the Court explicitly analyzed the issue, it implicitly concluded that the Multi–Party Accounts Statute was applicable to brokerage-type accounts. For the same reason, we reject Deutsch's assertion that "[a] close reading of [*Eastman* ] reveals that the holding of the court was independent of any consideration of the Multi-party Accounts statute." (Brief for Appellant, at 12.) To the contrary, we find that the Court in *Eastman* relied on section 6303. Accordingly, its holding is binding on us here.

¶ 9 As a result, we conclude that the Multi–Party Accounts Statute, and specifically Section 6303, applies to brokerage accounts.[1] The trial court therefore correctly concluded that the assets in the Libros account were solely hers. On this basis we affirm the trial court's order.[2]

¶ 10 Order affirmed.

---

**1.** We are aware that in *Steinberg v. Dep't of Public Welfare*, 758 A.2d 734 (Pa.Cmwlth. 2000), the Commonwealth Court came to the opposite conclusion. However, decisions of the Commonwealth Court, while persuasive, are not binding on this Court. *Kraus v. Taylor*, 710 A.2d 1142, 1144 (Pa.Super.1998) ("Although we frequently turn to the wisdom of our colleagues on the Commonwealth Court for guidance, the decisions of that court are not binding on this Court."). Further, we

note that two other published opinions, one from the United States Bankruptcy Court for the Middle District of Pennsylvania and one from the Court of Common Pleas of Centre County, held that the Multi–Party Accounts Statute *does* apply to brokerage-type accounts. *See In re Johnson*, 269 B.R. 324 (Bankr.M.D.Pa.2001); *Geertson v. McCrea*, 37 Pa. D. & C.3d 583 (Pa.Com.Pleas 1983).

**2.** Given our disposition, we need not address Deutsch's other contentions on appeal.