558 A.2d 170

Commonwealth of Pennsylvania, Department of Public Welfare, Appellant *v.* James S. Bean and Evelyn Gelone, Appellees.

Argued March 10, 1989, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Andrew A. Coates,* Assistant Counsel, for appellant.

*Robert G. Moffett,* for appellees.

OPINION BY SENIOR JUDGE BARBIERI, May 9, 1989:

Appeal is taken by the Department of Public Welfare (DPW) from the order of the Bucks County Court of Common Pleas, Orphans' Court Division (Orphans' Court), denying DPW's objections to the sale of real estate owned by Joseph and Laura G. Bean, Jr.

The order of the Orphans' Court is reversed.

Joseph and Laura owned, as tenants by the entireties, a family residence located on a ten acre tract of land. Laura is presently hospitalized at Norristown State Hospital for mental illness and has been so hospitalized on thirteen previous occasions since 1950. Medical Assistance (MA) benefits have been received for these hospitalizations despite Laura's property interest. DPW

deemed the value of the subject real estate unavailable to defray the cost of Laura's care since Joseph lived in the family residence throughout the relevant periods.

In May 1984, Joseph entered a nursing home. The Bean children requested and were granted MA benefits for Joseph. It was subsequently determined that Joseph would not be returning to the family residence. DPW advised the Bean children that the subject property was now deemed to be nonresident property, thereby necessitating its sale so that Joseph and Laura would remain eligible for continued public assistance with the proceeds being applied against the cost of care received by Joseph and Laura.

The Bean children acquired legal counsel to assist them in selling the subject property. Their counsel (Counsel) first executed a power-of-attorney for Joseph, naming his children, James Bean, Evelyn Gelone, and Katie Jackaway, as attorneys-in-fact. A will for Joseph was also executed which purported to leave his personal and real property to his children. Incompetency proceedings to have Laura declared incompetent were then initiated to provide good and marketable title. After a hearing, Laura was adjudicated incompetent and the three Bean children serving as attorneys-in-fact for Joseph were appointed co-guardians of Laura's estate.

On January 10, 1985, three days after Laura was adjudicated incompetent, the Bean children, acting in their capacities as Joseph's attorneys-in-fact and Laura's co-guardians, executed a deed transferring title of the subject property from tenancy by the entireties to tenancy in common with no right of survivorship. No court approval was sought by Laura's co-guardians.

As a result of Joseph's death on January 31, 1985, James Bean and Evelyn Gelone were appointed executor and executrix (co-executors) of Joseph's estate. On April 22, 1985, Joseph's co-executors and Laura's co-guardians

entered into an agreement of sale to sell the subject property and petitioned the Orphans' Court for approval. DPW filed objections, contending that the January 10, 1985 deed was invalid. The Orphans' Court approved the sale of the subject property but directed that the proceeds be placed in escrow pending resolution of DPW's objections. The Orphans' Court also appointed a guardian ad litem to protect Laura's interests.

Although the Orphans' Court found that Laura's co-guardians failed to seek court approval prior to execution of the January 10, 1985 deed, it denied DPW's request to strike the deed. The Orphans' Court, in exercising its equitable powers, excused the co-guardians' failure on the grounds that they merely acted upon Counsel's advice; that Laura's best interests were served; and that no conflict of interests, nor sinister motive, existed. DPW appealed to this Court for review,[1] presenting issues which pertain to the validity of the January 10, 1985 deed and the soundness of the decision of the Orphans' Court.

DPW initially contends that the January 10, 1985 deed should be set aside since it transferred property without court approval; failed to serve Laura's best interests; resulted in a conflict of interests; and was done to circumvent the full thrust of its claim for care and maintenance.

Sections 5155 and 5521(23) of the Probate, Estates and Fiduciaries Code, 20 Pa. C. S. §§5155, 5521(23), authorize an incompetent's guardian to sell, pledge, mortgage, lease or exchange the incompetent's real property or to release the incompetent's right in spousal

---

[1] This Court's scope of review of a decision of the Orphans' Court is limited to determining whether the record is free from legal error; and whether the findings are supported by adequate and competent evidence or predicated upon capricious disbelief of competent and credible evidence. *Damario Estate,* 488 Pa. 434, 412 A.2d 842 (1980); *Lychos Estate,* 323 Pa. Superior Ct. 74, 470 A.2d 136 (1983).

property providing that the court finds it to be in the incompetent's best interests. Moreover, an orphans' court possesses all legal and equitable powers required for, or incidental to, the exercise of its jurisdiction. *Damario Estate,* 488 Pa. 434, 412 A.2d 842 (1980); Section 323 of the Judicial Code, 42 Pa. C. S. §323. Accordingly, the Orphans' Court had authority to approve the January 10, 1985 deed's title alteration after the deed's execution provided it found the title alteration proper after reviewing the matter as if presented prior to execution. *See Mintz Trust,* 444 Pa. 189, 282 A.2d 295 (1971) (An orphans' court has the power to approve *nunc pro tunc* a deviation from a trust's express terms); *Henry Estate,* 341 Pa. 439, 19 A.2d 66 (1941) (The court can approve a guardian's investments after made). The issue thus becomes whether the equitable discretion exercised by the Orphans' Court was sound.

In this regard, DPW argues that a guardian must first seek court approval to ensure that the incompetent's best interests would be served by the guardian's contemplated action and that the Orphans' Court failed to specifically find the subject deed to be in Laura's best interests. Although the Orphans' Court could have been more specific in addressing this issue, the lack of specificity is not so substantial as to preclude adequate review. The Orphans' Court essentially found that the cost of Laura's care would inevitably deplete the entire estate in view of the remoteness of her return to competency and that severance of the entireties' ownership avoided such devastating depletion. Standing alone, this is not sufficient support upon which to find that Laura's best interests were served. It relates rather to the best interests of Laura's family.

Even assuming *arguendo* that Laura's best interests were served by execution of the deed in question, the Orphans' Court disregarded competent and credible rec-

ord evidence in determining that none of Laura's co-guardians suffered a conflict of interests when the deed was executed. The Orphans' Court found no evidence indicating that any of the Bean children were present when Counsel discussed estate planning with Joseph or that any of the children were aware of Joseph's will and their status as potential beneficiaries. The Orphans' Court further found no evidence that the co-guardians entertained a sinister motive.

Review of the record discloses that Counsel testified that Katie Jackaway accompanied him and his wife to the nursing home on October 17, 1984, at which time he discussed testamentary arrangements with Joseph, who indicated that he wanted to leave his half interest in the subject property to his children. N.T., pp. 12-15. Moreover, in paragraph twelve of the Petition to Determine Title, Counsel alleges that Joseph advised him in the presence of *others* that his children were to receive his half of the subject property. "Others" clearly refers to Counsel's wife and Katie Jackaway. Further record evidence discloses that each of the Bean children received a bill dated January 8, 1985 which identifies a legal service rendered on October 17, 1984 relative to Counsel's discussions with Joseph and Katie Jackaway. Also included therein is the cost of preparing and executing Joseph's will on October 26, 1984.

This evidence, and the reasonable inferences to be drawn therefrom, overwhelmingly supports a finding of a conflict of interests in that at least one of Laura's co-guardians had knowledge sufficient to create a personal interest in executing the deed at issue which was of such substantial nature as *might* affect her judgment in a material way. *See Banes Estate,* 452 Pa. 388, 305 A.2d 723 (1973). Moreover, absence of bad faith or fraudulent intent does not preclude a finding of a conflict of interests. *Id.*

As we have found the reasoning of the Orphans' Court unsound and unsupported as to two crucial issues, we need not address DPW's remaining contentions. Accordingly, the decision of the Orphans' Court is reversed and the January 10, 1985 deed is deemed to be without effect.

ORDER

AND NOW, this 9th day of May, 1989, the order of the Court of Common Pleas of Bucks County, Orphans' Court Division, is reversed and the January 10, 1985 deed is set aside as null and void.