OLSZEWSKI, Judge:
Maryanne Erhlich is the daughter of Sarah Heske, deceased, and residuary legatee of Sarah’s will. Theodore Heske, Sarah’s son, is also a residuary legatee of the will, but, more importantly, is the joint owner of four bank accounts established by Sarah during her life. Sarah opened the accounts exclusively with her money in 1989. In May 1991, Sarah drafted a will making no mention of the accounts and shortly thereafter executed a written document which stated that
the several certificates of deposit, including but not limited to accounts in the Meridian Bank, Continental Bank and Fidelity Bank, are owned solely by me, and that I have added my son Theodore’s name to said accounts for convenience only and not as gifts inter vivos. It is contemplated that the funds in these accounts may be rolled over or reinvested at their maturities and that it shall be my continuing purpose and intent to retain sole ownership therein.
R.R. at 4a. The Orphan’s Court en banc decided that Maryanne failed to overcome *244 the presumption that, unless established otherwise by clear and convincing evidence, contents of joint accounts are intended to pass to a surviving owner. 20 Pa.C.S.A. § 6304. It thus ordered that the funds in the accounts be awarded to Theodore and, as it affects this case, excluded them from the estate’s account.
Section 6304 of the Fiduciary Code is very clear:
(a) Joint Account. — Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created.
“Clear and convincing evidence” is the highest burden in our civil law and requires that the fact-finder be able to “come to clear conviction, without hesitancy, of the truth of the precise fact in issue.” Lessner v. Rubinson, 527 Pa. 393, 400, 592 A.2d 678, 681 (1991).
Here, the case was submitted before the Orphan’s Court on stipulated facts and the only evidence regarding Sarah’s intent at the time she formed the accounts was the declaration she signed nearly two years after opening them. While we agree that this evidence is probative of Sarah’s intent at the time the accounts were created, it is hardly clear and convincing. Sarah’s attorney would have testified that “he advised the decedent that he had some reservations about the legal effectiveness of the declaration of intent.” See Parties’ Stipulation, ¶ 10; R.R. at 19a. Thus, the only evidence which would rebut the presumption that Sarah intended Theodore to own the accounts if he survived her is a document which could support the conclusion that Sarah had a change of heart just as easily as it could support a finding that she intended a convenience account from the start. Since our function on appeal from an Orphan’s Court matter is only to determine whether the court’s findings are adequately supported by the record, Estate of Shahan, 429 Pa.Super. 91, 631 A.2d 1298 (1993), we cannot find any error in the court en banc's holding.
Maryanne contends vehemently that the trial court committed an error of law by not considering the declaration at all. She contends, and we agree, that evidence procured after the account’s creation is still probative of intent at the time of creation. Estate of Dembiec, 321 Pa.Super. 515, 468 A.2d 1107 (1983). The court en banc wrote in its final decree:
While Sarah W. Heske failed to evidence a “different intent” at the time she created the accounts in question, she executed subsequently a “Declaration of Intent” wherein she expressed her desire that the funds in the accounts in question be paid equally as between her daughter, Maryanne Erh-lich, and her son, Theodore Heske, Jr. While the “equities” favor distribution in accordance with Sarah W. Heske’s “Declaration of Intent,” the clear language of the Statute precludes such a distribution.
Final Decree at 2; R.R. at 46a. After reviewing the court en banc’s decree, it is reasonably clear that it actually considered the “Declaration of Intent,” but simply found that it tended to prove Sarah’s intention at the time she wrote the declaration, and not at the time she created the accounts. The court specifically noted that there was no positive evidence establishing Sarah’s intent at the time she created the accounts and that, instead of drafting the Declaration of Intent, Sarah could changed ownership of the accounts. We cannot, therefore, fault the court below for being suspicious of Sarah’s belated efforts. We agree with the court en banc that the Declaration of Intent, standing alone, is insufficient to rebut the statutory presumption.
Finally, Maryanne argues that since the accounts were rolled over in 1992, the Declaration of Intent is effective with regard to the “new” investments. We disagree. First, the parties never stipulated that the accounts were rolled over and this fact was therefore not before the court. More importantly, however, the presumption requires a party to prove her intent at the time of the accounts’ “creation.” There is no dispute in this case that the accounts in question were created well before the “Declaration of Intent” was signed, and we are aware of no law which *245 elevates a decision to continue an investment to one which creates a new account. Indeed, the presumption’s efficacy lies in the “assumption that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death.” 20 Pa.C.S.A. § 6304, Official Comment. Thus, the intent under scrutiny should be the one concomitant to the initial decision to name a joint owner — not the financial decision to remain committed to the investment.
Order affirmed.
McEWEN, J., files a dissenting opinion.