657 A.2d 34

**Joseph J. WILHELM, Sr., and Leanna J. Wilhelm, Appellants,**

v.

**Joseph H. WILHELM, Jr., Donald Wilhelm, Mrs. Debra Fleming and Barbara Kovac Yeager, Integra Bank and Northwest Savings Bank, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1994.

Filed April 12, 1995.

232

Charles R. Rosamilia, Jr., Lock Haven, for appellants.

George L. Daghir, St. Marys, for appellees.

Before DEL SOLE, FORD ELLIOTT and BROSKY, JJ.

DEL SOLE, Judge:

This is an appeal from the Judgment entered in accordance with the court's decision which found in favor of defendant/Appellees and against plaintiffs/Appellants, and which directed that certain bank accounts be utilized for Appellant, Joseph Wilhelm, Sr.'s maintenance and welfare. Whether any such sums are needed is to be determined by defendant, Joseph H.

Wilhelm, Jr., with the consent of his siblings who are the remaining defendants.

This action was initiated by Joseph J. Wilhelm, Sr. and his wife, Leanna Wilhelm. Named as defendants were the plaintiffs' four children, and three banking institutions. Captioned as a "Petition for Injunction" it alleged that Joseph had been in possession of a large sum of money which he received from various sources during his marriage and that for the convenience of the parties he opened several bank accounts in joint names with each of the party's four children. The plaintiffs averred that all parties agreed that the money placed in the accounts did not belong to the children and that Joseph received all interest which the accounts generated. The Complaint also alleges that because of health problems Joseph turned over all his affairs to his wife as indicated by a power of attorney and that the bank refused to honor Joseph's intent to withdraw monies when the power of attorney was presented to them by Leanna. The plaintiffs further claimed that their children had refused to turn over the certificates of deposit, which the bank maintained it needed to allow plaintiffs access to the account. Averring that the funds in the accounts belonged to Joseph and Leanna, they requested the court to order their children to turn over all the certificates of deposit and other necessary documents to effectuate transfer of the funds and to order the financial institutions to turn over the funds which they are holding in Joseph's name alone or in joint accounts he had with his children. In response, the financial institutions denied that they refused to cooperate and liquidate the questioned accounts. They maintained that they informed Plaintiffs that they had to provide appropriate documentation before action could be taken on the accounts and that Plaintiffs indicated they did not have possession of the relevant items. The children also answered denying that the accounts were "convenience accounts" and alleging that Joseph made each of the children co-owners of their respective accounts with rights of survivorship. The children alleged that the plaintiffs, although married, were separated for a period in excess of ten years and that money deposited by

Joseph into the accounts did not constitute marital property, rather a large bulk of money was acquired by Joseph as a result of the death of his sister. The children, as individual defendants, also alleged that their father, Joseph, due to various infirmities, became incapable of managing his own financial affairs shortly after he created the accounts. They ultimately requested that the court dismiss their parents' complaint.

A hearing was held during which each of the parties testified, along with representatives from the various financial institutions involved and doctors who examined Joseph to provide evaluations of his condition. The court also admitted deposition testimony from others who examined Joseph, a Last Will and Testament written by Joseph in 1983, in which he bequeaths all his property in equal shares to his four children without any provision for Leanna, and an Inheritance Tax Return related to the death of Joseph's sister.

Following the hearing the court made certain findings of fact. Relevant for purposes of our discussion on appeal, the court found that Joseph and Leanna had experienced marital difficulties during the 1970's and 1980's which culminated in Leanna filing a complaint in divorce. The complaint was dismissed for failure to prosecute. During that period of marital discord, the court found that Joseph created numerous joint bank accounts with his individual children, which totaled in excess of $100,000.00 as of July 1992. The court also found as a fact that there was "no evidence presented to indicate the monies creating the respective joint and survivorship accounts was marital property" and that Joseph received $48,862.84 upon the death of his sister in 1983. Based upon the reports of the expert witnesses and the court's observation of Joseph's testimony, it concluded that Joseph is "generally incapable of handling his financial affairs." Although the court made mention of the fact that Joseph "attempted" to create a general power of attorney to his wife, it made no factual finding as to whether Joseph's actions did create a valid power of attorney. The court concluded that the banking institutions acted properly in refusing the plaintiffs' requests to withdraw

funds, since they were unable to produce the relevant documents. The court also concluded that the funds in the accounts are to be maintained and made available to Joseph during his lifetime "upon demonstrated need" and upon his death "the balance of any funds remaining in each account shall pass to the individual surviving joint tenants." In accordance with its findings of fact and conclusions of law, the court found in favor of all defendants and designated the plaintiff's son Joseph H. Wilhelm "to act on behalf of all said joint tenants to determine, from time to time, whether any of said funds are needed for the maintenance and care of Joseph J. Wilhelm, Sr." It is only with the "consent of all other joint tenants and/or by order of Court" that he shall disburse the sums for the benefit of Joseph.

Joseph and Leanna filed this appeal raising numerous issues, many of which overlap and concern the overall question of whether the court erred in formulating the order it entered.[1] Because we do find irregularities in the court's procedures, error in some of its findings and conclusions of law and error in its decision to name an interested and tendentious party as the trustee of the funds, we reverse and remand this matter to the court for further proceedings.

 We begin with a discussion regarding ownership of the accounts and the court's conclusion regarding to whom the funds in these accounts should pass upon Joseph's death. The

---

1. In their eleventh, and somewhat unrelated issue, Appellants contend that this matter was improperly handled by a senior judge who was also responsible for supervising one of their children, Appellee–Donald Wilhelm, in his role as a District Justice. First we note, Donald Wilhelm was not a District Justice when these proceedings were commenced, nor did he obtain that position prior to or during the hearings in this matter. The only matters pending at the time of Donald Wilhelm's interim appointment to the position of district justice was the adjudication and verdict, which was issued prior to the general election. Furthermore, as acknowledged by Appellants, a senior judge does not have direct supervisory capacity over a district justice, such supervision only occurs if the President Judge is not available. The judge in this matter advises that he at no time engaged in or was assigned any supervisory responsibilities over Donald Wilhelm. For these reasons we find support for the court's conclusion that no conflict of interest existed and no appearance of impropriety.

law in this Commonwealth regarding joint accounts changed with the passage of Chapter 63 of the Probate, Estates and Fiduciaries Code, 20, Pa.C.S.A. §§ 6301–6306. Under Section 6303 during the lifetime of the parties, a joint account belongs to the party or parties who contributed the funds to the account, unless there is clear and convincing evidence of a different intent. *Lessner v. Rubinson,* 382 Pa.Super. 306, 555 A.2d 193 (1989) Proof that a different intent existed and a gift was given is the burden of the party who is claiming to have received the benefit of that gift. Such proof must be established by clear, precise, direct and convincing evidence. *Id.* See also *In re Estate of Heske,* 436 Pa.Super. 63, 647 A.2d 243 (1994). Thus, as explained in the official comment to Section 6303 there is an "assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit." However, all sums remaining on deposit in a joint account at the death of one of the parties belongs to the surviving party, unless clear and convincing evidence of a different intent exists. 20 Pa.C.S.A. § 6304.

In this case it is clear that the monies placed in the joint accounts were deposited by Joseph. The children each testified that they did not contribute to the accounts, rather the accounts were all opened as a result of deposits made by Joseph. Further, the court did not find, nor would there be any evidence to suggest, that Joseph intended to make an inter vivos gift to his children when he opened joint accounts. As plaintiff's son testified: "It's his money. . . . It was to be used basically for him and—I guess just for him, no other reason." The children, when testifying advised the court that their father created the accounts as a means of keeping the money from their mother. The parties' daughter Debra testified: "He told me that he was doing it because he did not want my mother to have the money, and if she knew about the money, she would try to take his name off it." Thus, applying the law to the facts of this case, it appears certain that Joseph had a right to withdraw some or all of the amounts he deposited into the joint accounts as he wished, since he was

the sole person responsible for the contributions to the accounts. Likewise, Joseph's children would be required to turn over those documents which would be necessary to effectuate the transfer.

While it can be readily determined that Joseph had the right to the funds in the accounts over his children, it cannot be said from the record before us whether or not Leanna has any rights to those funds. The trial court made a finding, not supported by the record, that the funds used to create the accounts by Joseph were not marital property. The court found that there was "no evidence presented" to indicate that the monies deposited were marital property. However the law is clear that absent certain exceptions all property acquired during the marriage is marital property. 23 Pa.C.S.A. § 3501. As the court stated in *Fidelity Bank v. Carroll,* 416 Pa.Super. 9, 13, 610 A.2d 481 (1992): "Under the Divorce Code, 23 Pa.C.S.A. § 3101 *et seq.,* it is presumed that all real and personal property acquired by the parties during marriage is marital property regardless of whether the property is held individually or by some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety, 23 Pa.C.S.A. § 3501(b), and all such property is subject to equitable distribution upon request of either party, 23 Pa. C.S.A. § 3502(a)." The only evidence that some of the property in this case may not have been marital property came from the testimony that Joseph received an certain monies after the death of his sister. Under § 3501(a)(3) of the Act, property acquired by bequest, devise or descent is not included as marital property. The court found as a fact that Joseph obtained $48,862.84 as surviving joint tenant on personal and real property of his deceased sister. There is evidence to support this finding and therefore, the amount acquired by Joseph as a result of his sister's passing would be excluded from marital property. However since the accounts, according to the findings of the trial court, were worth more that $100,000.00, the presumption would appear to stand as to the remaining amount and it may constitute marital property subject to equitable distribution.

An exception from the conclusion that property acquired during marriage is marital property is also found where the property is acquired after final separation. 23 Pa.C.S.A. § 3501(a)(4). This subsection however does not come into play under the facts of this case. The court made no finding that the property in question was acquired by Joseph after a final separation, nor did the court find that a final separation ever existed. Rather the testimony of both Mr. and Mrs. Wilhelm supports a conclusion that they continue to exist as a married couple.

The court accepted as evidence in this case a copy of a Will signed by Joseph in 1982, which the court found to be "still effective," and which failed to make any provisions for Leanna. The court also determined that upon Joseph's death the funds remaining in the joint accounts would pass to the children who were named on the accounts. We find both of these findings to be premature. As we have stated Leanna may have an interest in any marital property deposited into the accounts which she may wish to protect. Further, if in fact Joseph's 1982 Will remains valid after his death, Leanna, as his wife will have the right to elect against that Will. A surviving spouse has a right to an elective share of one-third of all "property conveyed by the decedent during the marriage to himself and another or others with right of survivorship to the extent of any interest in the property that the decedent had the power at the time of his death unilaterally to convey absolutely or in fee." 20 Pa.C.S.A. § 2203(a)(4). Because the funds at issue fall into the category covered by § 2203(a)(4), it cannot be determined at this time who shall recover the monies remaining in the accounts.

Remaining for our discussion is the court's conclusion that Joseph is no longer able to handle his own financial matters and the court's designation of his son to act on behalf of all the children to determine if any of the funds are needed for Joseph's care. Our first concern with result of this ruling is that the court did not have the authority take such action. Section 5511 of 20 Pa.C.S.A. addresses the procedure following petition and hearing in which a person may be found to be

incapacitated and in which another may be appointed to serve as guardian of his person. Much as the court avoided reference to other statutory provisions in its rulings in this case, the court did not make reference to, nor did it require the parties to follow the procedure outlined in Subchapter C of Title 20. However, because the parties in this action also proceeded in a most informal fashion and clearly consented to the expert evaluations, we conclude that each party understood that Joseph's mental capacity and his ability to manage his financial affairs was a question at issue on which the court would rule. Because no objection was raised during the proceedings to this process, we will go on to consider the court's ultimate determination.

There is ample evidence in the record to support the court's conclusion that Joseph is no longer capable of handling his financial affairs. The court, however, made no finding as to whether Joseph was capable of naming a person to take charge of his financial concerns. When testifying, Joseph emphatically advised the court that he trusted his wife, Leanna, to manage his care and finances and that he was satisfied with the way in which she was taking care of him. There was evidence offered that in February of 1992 Joseph signed a power of attorney over to his wife Leanna. The court never ruled whether Joseph had the capacity to sign such a document at the time it was signed, or whether he understood what he had signed. There is no clear evidence from the record and the expert reports that Joseph did not understand that he was trusting his care and welfare to his wife. Thus, absent such a ruling, the power of attorney remains valid and Leanna, in that capacity, would have the right and ability to act on behalf of her husband and withdraw the monies he had deposited into the joint accounts. Because no ruling was made on the validity of this critical document, we remand this matter to the trial court for such a finding. The court may take testimony on the question and determine whether Joseph had the capacity to execute a power of attorney at the time the document in question was signed. If he did, the document remains valid and Leanna has a right to proceed in her

husband's behalf and withdraw the funds which he deposited into the joint accounts. If it is determined that the document was executed at a time when Joseph did not appreciate what he was doing, the power of attorney will be invalid.

■ In the event the power of attorney is not valid, we cannot support the court's decision naming the parties' son Joseph H. Wilhelm as guardian of the funds to be distributed to his father where need is demonstrated and where the consent of the siblings and/or the court is obtained. Subsection (f) of 20 Pa.C.S.A. § 5511 directs that the court shall not appoint as a guardian a "person whose interests conflict with those of the incapacitated person except where it is clearly demonstrated that no guardianship support agency or other alternative exists." It is readily apparent from the nature of the action before us that Joseph H. and his siblings each have an interest which conflicts with that of their father. They each stand to benefit by the amounts of money remaining in the account at the death of their father. It was entirely inappropriate for the court to name any of Joseph's children as the person responsible for determining how and when his funds may be spent. While the statute does provide that a family relationship "shall not, by itself, be considered as an interest adverse to the alleged incapacitated person," Id., we have far more in the instant case. The record is replete with evidence that the children and their parents have nothing but a hostile relationship. While this may have initially been directed against their mother, the children each have indicated that they have not spoken or cared for either parent for an extended period of time. More importantly, the children had a direct financial interest in the amounts of money expended on their father's care and therefore the amounts remaining in the joint accounts. We conclude that it is necessary for the court to reconsider this ruling and name a disinterested party as guardian, if one is necessary.

If the court finds that the power of attorney signed by Joseph was valid, there shall be no need for a guardianship decision to be made with regard to the funds in question. If however, a guardian is found to be necessary the court is to

appoint a disinterested party. The person or persons who will be entitled to the funds held in the joint accounts at the time of Joseph's death, is a question left for another day, which we hope will not be soon to occur.

Reversed. Case remanded for proceedings with this opinion.